UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SKOT DAVID WILSON,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　Case No. 3:19-cv-1430-J-34JRK
　　　v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
CLAY COUNTY SHERIFF'S OFFICE,　　　　 )
　　　　　　　　　　　　　　　　　　　　)
　　　　Defendant, and,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
SARGEANT BOONE, individually and in his capacity as　)
Deputy Sheriff for CCSO,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Defendant,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　Demand for Jury Trial

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, SKOT DAVID WILSON, Pro Se and complaining of and against the SHERIFF OF CLAY COUNTY, FLORIDA (hereafter referred to as CCSO), and SARGEANT BOONE, individually and in his capacity as a law enforcement officer in the employ of CCSO, Defendant(s). Plaintiff SKOT DAVID WILSON, Pro Se, for his complaint alleges as follows:

### PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief for the violation of her rights secured by 42 USC §1983, §1988, the Fourth and Fourteenth Amendments to the United States Constitution.

2. The claims arise from a July 15, 2019 incident in which Officers of the CLAY COUNTY SHERIFF'S OFFICE ("CCSO"), and with specificity, SARGEANT BOONE of CCSO, acting under color of state law, intentionally and willfully subjected plaintiff to, inter alia, false arrest, retaliatory arrest, and false imprisonment, thereby and without probable cause depriving his of his Federally secured rights.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 USC §1331, 42 USC §1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

5. The amount in controversy exceeds $75,QOO:OO excluding interest and costs.

6. Venue is laid within the United States District Court for the Middle District of Florida in that Defendants are located within, and all parts of the events giving rise to the claim occurred within the boundaries of the Middle District of Florida.

## PARTIES

7. Plaintiff SKOT DAVID WILSON is a legal resident of the United States and at all times here relevant resided in Clay County, Florida.

8. Defendant CLAY COUNTY SHERIFF'S OFFICE is a municipal corporation organized under the laws of the State of Florida. At all times relevant hereto, Defendant CCSO, acting through their legal capacity, was responsible for the policy, practice, supervision, implementation, and conduct of all CCSO matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all CCSO personnel. In addition, at all times here relevant, Defendant CCSO was responsible for enforcing the rules of the CCSO which must be compliant with the laws and statutes of the State of Florida and the United States, and for ensuring that the CCSO personnel obey the laws of the United States and the State of Florida.

9. Officer SARGEANT BOONE was, at all times here relevant, a police officer/sworn deputy of the CCSO, and as such was acting in the capacity of an agent, servant and employee of the CCSO. On information and belief, at all times relevant hereto, SARGEANT BOONE was plaintiff's "arresting officer" and was under the command of the other two officers on the scene. SARGEANT BOONE is sued in his individual capacity.

10. All other hereunto unnamed individual defendants ("the officers"), whose names are currently unknown to plaintiff, are employees of CCSO, and may be sued in their individual capacities upon further discovery and amended complaint.

11. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of Florida.

## NOTICE OF CLAIM

12. Within 90 days of the incident, plaintiff filed written grievance/complaint and separately Notice of Claim with the Florida Sheriff's Risk Management Fund. Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of. Plaintiff has also noticed Defendant, pursuant to Florida Statutes, of intent to bring legal action for the state level infractions and transgressions in which he has standing to bring such actions and torts.

## FACTUAL ALLEGATIONS

13. Plaintiff is a American citizen, legally residing in the United States.

14. On 15 July 2019, Plaintiff's was in a public space, at "Gate Gas Station", in full exercise in his liberty and enjoyment thereof, as a free, law abiding citizen, and as a patron of Gate, not engaged in any type of criminal activity, and was in full legal exercise of his liberty when approached by deputies of CCSO.

15. Plaintiff was accompanied by his son, Alexander Wilson, whom he had followed to the Gate station to get fuel for Plaintiff's van, a Nissan Quest, which Plaintiff was allowing his son to use.

16. Prior to going to the Gate station, Plaintiff and his son had come from a mechanic, who had diagnosed possible transmission issues. Plaintiff was considering giving the Nissan to his son, and Plaintiff and his son were disheartened that the van, a Nissan Quest, had potential problems.

17. Upon arrival at the station, Alex exited the Quest and walked from his driver's side door to the opposite side of the van, where Plaintiff had parked. Alex took the brass ignition key, and at and from a distance of about eight feet threw the small, single ignition key at the van stating (sic) "I don't want to waste any more money on this thing" throwing the key at the van in a frustrated manor. The key hit the rear vent window, and in a freak accident the right rear vent window broke. Disheartened at this, Plaintiff's son entered Plaintiff's van and sat down next to Plaintiff, where Plaintiff comforted him, telling him that he would insure, as his father, that he would help with the mechanical issues and help Alex meet his needs, get through whatever mechanical issues the van had, and help Alex return to the Appalachian Trail. Plaintiff called his 92 year old mother, Alex's grandmother, in New Jersey, and was on speaker phone with her both reassuring Alex that family solves family

problems. At no time was there any yelling, violence, any type of illegal acts or threats or anything which could be construed as anything other than a simple freak accident seeming like ironic insult to the injury of a bad mechanic's report on the van Plaintiff's son was using.

18. Defendants arrived at location, and a "rookie" officer, who was first on the scene, approached Plaintiff's van driver's side window, which was rolled up. The CCSO officer asked if everything was alright, and Plaintiff responded that everything was fine and the officer's presence wasn't needed, stating that the window breaking was a freak accident. When pressed by the officer for more information, Plaintiff explained in detail that he and his son were just told of the error code on the Nissan, that Plaintiff's son was and had been just dealing with a string of failures, setback, and bad luck, that said officer was interrupting a call with his Plaintiff's mother, that Plaintiff owned both vans, and how it was a simple freak accident and no police assistance was warranted or desired. The officer asked who owned the Nissan, to which Plaintiff replied that he did. Plaintiff again stated that he owned both vands, that there was no crime but instead an accident, and requested to be left alone. The Officer asked how (sic)"would he know that (Plaintiff owned both vans)", to which Plaintiff told him his full name, told him he could quite easily run the tags and they would both show ownership by Plaintiff. The Officer asked for Plaintiff's ID, and Plaintiff asked why, asking, in detail, if the Officer had probable cause to believe a crime had been committed or even suspicion of one, if so, what kind of crime(?). The officer said that (sic) he "did not know", which was why he wanted to investigate. Plaintiff reminded the officer that unless he witnessed a crime or had probable cause to believe one had occurred, that he wasn't allowed to hunt for information by force, and Plaintiff also told him that if he had suspicion of a crime that he could ask my identity, but beyond that his presence was an unwanted intrusion. Plaintiff explained again that it was an accidental break, that the Gate station probably had videos and he could check there, and that he didn't have the right to "fish" for information if he couldn't state or see any probable cause, and that since I owned both vans and said there was no crime, that my business with him was concluded and asked him to stop speaking to me.

19. When SARGEANT BOONE arrived, maybe three minutes after the first officer arrived; he did not consult with the on scene officer but proceeded to the passenger side of Plaintiff's van. BOONE made eye contact with Alex, who was in and on the passenger seat of Plaintiff's van. BOONE made full eye contact with Alex, then attempted to open the door to Plaintiff's van. He did not ask permission do that act. Plaintiff asked BOONE

what he thought he was doing, and BOONE replied he thought my son was "passed out", but Plaintiff witnessed BOONE and Alex having made eye contact and told BOONE he was lying. BOONE appeared agitated at being called a liar after he had, in fact, lied to Plaintiff as to what he attempted to enter Plaintiff's van.

20. BOONE came around to Plaintiff's driver's window. Plaintiff explained that the van had an issue with reverse, and that his son had thrown the key at the van, an object which was highly unlikely to damage the van, but in a freak accident it must have hit the rear vent window just right making it break. Plaintiff further explained that he owned both vans, was not actually involved in the accident but watched it happen, that if his rookie officer who was first on scene or he wanted to see if there was any kind of criminal activity or occurrence that they could go ask the people in the Gate station to check their cameras, that they as such had no probable cause to believe there had been a crime, did not observe any crime, and really even had no logical reason to suspect a crime, which would only allow them to ask Plaintiff to identify himself, which he had already done. BOONE stated he did not know what kind of crime had been committed, but wanted to investigate to see if any had. Plaintiff again asked what type of crime he was "investigating", and got no answer. Plaintiff again asserted that without witnessing a crime or probable cause to believe one had occurred that they (the officers) had no legal right to continue to bother Plaintiff, and if they had suspicion they only had the right to ask my identity, but Plaintiff again demanded to know what crime they had probable cause of, or suspicion of, to which BOONE stated "we don't know, that's why we need to investigate" Plaintiff told BOONE that once he knew what kind of crime he had suspicion of or probable cause to believe had occurred, that only then would he have the legal right to continue any inquiry of Plaintiff or disturb Plaintiff further.

21. BOONE asked for Plaintiff's Identification, and Plaintiff stated he contested to them even asking him any further questions. Plaintiff even stated to BOONE that if he went and got Plaintiff an attorney he could ask any further questions through (sic) him. BOONE became agitated. Plaintiff admits being what could be construed as "rude" at this point, but there is no crime in him having been so, especially in ,light of the illegal intrusion into Plaintiff's rights. BOONE demanded Plaintiff exit his vehicle, but at no time was Plaintiff ever asked for insurance paperwork or registration of either van, both of which he owned. BOONE stated that they "HAD" to make an investigation, and Plaintiff again asked why, without reply or reasonable explanation, Plaintiff again asking what crime they witness or had probable cause to believe existed or had taken place, or even had a

suspicion of. Plaintiff was told, by both BOONE and the original responding officer, why they needed to investigate was to determine if there had been a crime. Plaintiff again told CCSO officers that they had no legal right to "fish" for information, or conduct an investigation, where they had no probable cause, or even suspicion, and especially where there was no victim, and a reasonable explanation had already been offered with no reason for anyone on scene to doubt that.

22. Upon information and belief, defendants made no attempt to take a statement from plaintiff as to what type of crime they were investigating, or suspected. Plaintiff made specific note that this was not a "traffic stop", since the van was not in motion or observed to be in motion at any time by officers. Further, that Plaintiff noted that officers knew the limits to a "Terry stop" and without reason to believe, probable cause, or suspicion of a crime that CCSO could show no valid reason for their intrusion into Plaintiff's free exercise of his liberty.

23. After Plaintiff had exited his vehicle, BOONE again persisted for Plaintiff's identification. Plaintiff again asked what crime or suspected crime CCSO was "investigating", and was clearly told, again, that, (sic) "We don't know yet, that's why we're investigating"

24. BOONE stated to take notice on the back of the Driver's License which states that (sic) "The State of Florida retains all rights" to the license. Plaintiff is aware that case law and statute grants protections that doesn't give a "blanket" authority for any officer or employee or agent of the State of Florida, or their representatives or agents, to upon whim and without good cause, necessitate a citizen providing identification without good and valid reason. In order to prevent BOONE from becoming more rude or hostile, Plaintiff provided his Driver's License to Boone, who took it, turned around, walked several steps away supposedly to "run" his license, and Plaintiff stated to BOONE for him to "Hurry up." BOONE then turned around and instructed the initial officer to cuff Plaintiff and place him in his cruiser. BOONE stated "you're under arrest" to Plaintiff. When Plaintiff asked why he was being arrested, BOONE stated "resisting arrest", Plaintiff' then asked what he was being arrested for that he was "resisting", and got no reply.

25. The rookie officer placed Plaintiff in the back of his police cruiser, Plaintiff told this officer that the cuffs were too tight, and the cruiser was too small for his 330 pound frame. Plaintiff sustained injuries to his left thumb and right shoulder being placed in and taken out of the cruiser, when an SUV which was on scene could

have offered more room and safety. Plaintiff was in the back of the cruiser, uncomfortably handcuffed, for about ten to fifteen minutes.

26. Officers then spoke to Plaintiff's son, and believes made a search or cursory search of both vans. CCSO never requested insurance or registration papers, and never explained why they "had" to make an investigation, what crime they either suspected or had probable cause to believe had occurred.

27. After Plaintiff was released and uncuffed he expressed that his shoulder and left hand hurt, and when he talked to BOONE again he told BOONE he had no reason to detain him, causing Plaintiff stress, aggravation, and injury, and that without that they had no right to "investigate" fishing for information, that it would be the same thing as if they knocked upon someone's door, entered without a warrant, demanded identification, searched and questioned without any valid reason to do so. When Plaintiff stated this to BOONE and that Plaintiff believed BOONE needed better training, BOONE stated to Plaintiff that if he said one more work that BOONE would arrest him and not to make him "teach (Plaintif) a lesson". Plaintiff and his son swept up the glass and left, never having attained what probable cause or suspected crime BOONE or CCSO supposedly suspected or why they "needed" Plaintiff's identification, especially since Plaintiff's van (one he was driving and in control of) had not been accidentally damaged. Plaintiff was also forced to sign a statement about the window, and was told failure to make that statement would result in his arrest.

28. Plaintiff went to the emergency room at Baptist South Fleming on Highway 17 later that night, and the doctor determined there had been stress injuries to Plaintiff's left thumb and right shoulder.

29. Plaintiff suffered pain, physical damage, stress, aggravation, anxiety, and recurring nightmares about being arrested for no reason and that hurting his family life, as well as losses, from this incident caused by CCSO. Plaintiff's complaint to CCSO and "investigation" by internal affairs yielded no satisfaction or accountability by CCSO, or damages or compensation for personal injury caused by being wrongfully placed handcuffed into a cruiser that was obviously too small of a space for Plaintiff, and CCSO had a duty to insure the safety, wellbeing, and care including prevention of injury and risk of injury towards and for Plaintiff as they took his liberty away and detained him. Plaintiff is still suffering a host of issues from the unwarranted and unlawful encounter with BOON and CCSO.

## DAMAGES

30.. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages: a. Violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of their person; b. Violation of his right to Due Process of Law under the Fourteenth Amendments to the United Stated Constitution; c. Violation of section 12 of Florida's Declaration of Rights to be free from an unreasonable search and seizure; d. Violation of section 2 of the Florida to due process; e. Physical pain and suffering; f. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety; g. Loss of liberty. h. Damages specifically against violations against false imprisonment and the criminal conduct of CCSO and SARGEANT BOONE shall be retained for State Court.

## FIRST CAUSE OF ACTION (42 USC § FIRST CAUSE OF ACTION (42 USC § 1983)

31. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

32. Defendants have deprived plaintiff of his civil, constitutional and statutory rights under color of law and have conspired to deprive her of such rights and are liable to plaintiff under 42 USC § 1983.

33. Defendants' conduct deprived plaintiffs of their right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States

34. Defendants' conduct also deprived plaintiffs of her right to due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

35. Defendants, primarily SARGEANT BOONE, but also hereunto unnamed officers, falsely arrested plaintiff and failed to intervene in each other's obviously illegal actions.

36. Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION (MUNICIPAL AND SUPERVISORY LIABILITY)

37. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

38. CCSO is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after leaning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. CCSO has been alerted to the regular use of excessive force and/or abuse of power and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case. It is believed that their internal affairs unit is toothless and just for public show and to decrease, negate, avert, or deny liability or admission of wrongdoing when it occurs.

39. The aforesaid event may not an isolated incident. The CCSO has been aware for some time, from lawsuits, notices of claim, complaints filed with civilian complaint and internal affairs units, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers use excessive force, unlawfully search and seize citizens, use color of law and traffic stops to "hunt" for crimes and charges to place upon citizens, and bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the CCSO has allowed policies and practices that allow the aforementioned to persist.

40. CCSO Internal Affairs unit finds complainants "lack credibility" even where complainants have sworn testimony as to their validity. Citizens act to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, CCSO virtually never initiates their own findings of false statements against officers who have made false statements in their own defense, nor, it is suspected, do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at CCSO. CCSO

apparently has little or no enforcement mechanisms once making a finding against an officer. It appears that all CCSO acts and officers are perfect, without flaw, and can do no wrong.

41. Further, CCSO has no effective procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct as far as plaintiff can tell. Without this notification, improper search and seizure practices and incredible testimony go uncorrected.

42. CCSO is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, CCSO fails to take corrective action. This failure and these policies caused the officers in the present case to violate Plaintiffs civil rights, without fear of reprisal. CCSO officers, without being in full camera, have a real ability to lie, falsify reports, and act with impunity without consequences.

43. Plaintiffs have been damaged as a result of the deliberate indifference of CCSO to the constitutional rights of the Clay County's inhabitants.

44. CCSO is liable for the damages suffered by Plaintiffs as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The County has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

## THIRD CAUSE OF ACTION (CONSPIRACY)

45. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

46. Defendants, named and unnamed, agreed to violate the plaintiffs' rights in the manner described above. Further defendants made an agreement to attempt to cover up facts concerning the reason for the unlawful arrest and detainment of Plaintiff, this by lies or lies of omission in the investigation of this case by internal affairs.

47. Plaintiff was injured as a result of defendants' conspiracy and collusion, including, but not limited to, knowingly violating Plaintiff's rights as their normal practices.

## FOURTH CAUSE OF ACTION (CONSTITUTIONAL TORT)

48. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

49. Defendants, acting under color of law, violated plaintiff's rights pursuant to § section 2 of the Florida State Constitution, among others. Plaintiff's tort in re other state level violations shall be reserved for state court actions, specifically those that constitute crimes committed by CCSO in this incident.

50. A damages remedy here is necessary to effectuate the purposes of § section 2 of the Florida Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

## FIFTH CAUSE OF ACTION (NEGLIGENT HIRING & RETENTION)

51 Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

52 Defendant CCSO owed a duty of care to plaintiff to prevent the loss of liberty and mental abuse sustained by plaintiff. Defendant CCSO owed a duty of care to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiff's as a result of this conduct.

53. Upon information and belief, defendant officers were incompetent and unfit for their positions.

54. Upon information and belief, defendant CCSO knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous and had previously likely, or had, falsely arrested civilians without probable cause.

55. Defendant CCSO negligence in hiring and retaining the officer defendants proximately caused plaintiff's injury, and threatened and threatens others. Defendant systemically fails at training, and/or enforcing, respect for citizen's Constitutionally protected rights.

56. Because of the defendant CCSO's negligent hiring and retention of defendant officers, plaintiff incurred damages described above.

### SIXTH CAUSE OF ACTION (RESPONDEAT SUPERIOR)

57. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

58. Defendant SARGEANT BOONE, and hereunto unnamed officers, intentional tortious acts were undertaken within the scope of their employment by defendant CCSO, and in furtherance of the defendant CCSO's interest.

59. As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of defendant CCSO, Plaintiff was damaged.

### SEVENTH CAUSE OF ACTION (RIGHT TO BE SECURE FROM UNREASONABLE SEIZURES)

60. Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as though fully set forth hereat.

61. Defendants and their employees and agents violated Plaintiffs' Fourth Amendment rights to be free from unreasonable seizure of their property by unjustly detaining Plaintiff and making any cursory detainments or searches without a warrant, or without probable cause.

62. Defendants and their employees and agents violated Plaintiff's rights to be free from false arrest.

63. These unlawful actions were done with the specific intent to deprive Plaintiffs of their constitutional rights to be secure in his person and/or property. When Plaintiff was arrested his property was technically "seized" as control of it was removed from him and assumed by CCSO/Defendant(s).

64. Plaintiff believes that the acts of the Defendant and their employees and agents were intentional in failing to protect and preserve Plaintiffs' personal right and/or property and that, at minimum, Defendants were deliberately indifferent to the likely consequence that the property could be seized upon unlawful arrest,

Plaintiff has suffered and continue to suffer loss due to aggravation of injuries and perhaps new injuries and is entitled to compensatory damages for his personal injury.

### EIGHTH CAUSE OF ACTION (RIGHT TO DUE PROCESS OF LAW; 42 U.S.C. § 1983)

65. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

66. Defendants, their employees and agents, owed Plaintiffs a duty under the due process, wherein Plaintiff was taken into custody and deprived of liberty without suspicion of any crime, probable cause to believe any crime had occurred, or any witness of or allegation of an actual crime. Plaintiff was deprived of his liberty and injured in the process of being placed in and removed from a small space, backseat of a cruiser, in handcuffs, which was his person being illegally restrained under color of law.

### NINTH CAUSE OF ACTION (STATE CREATED DANGER)

67. Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as though fully set forth hereat.

68. Defendant(s), BOONE specifically and uniquely, escalated the tone and mood of the unwanted and unwarranted encounter between Defendant(s) and Plaintiff. His demeanor, attitude, arrogance, and retaliatory act of making an illegal arrest could have escalated the situation and placed the Defendant(s), Plaintiff, and uninvolved citizens in danger.

69. As a direct and proximate consequence of the acts of Defendants' agents and employees, Plaintiff has suffered and continues to suffer actual and potential injury to his health and safety, a diminished economic standing, and is entitled to compensatory damages for his losses and potential losses.

### TENTH CAUSE OF ACTION

### (Violation of Civil Rights: Interference By Threat, Intimidation or Coercion)

70. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

71. Defendants' agents and employees used arrests, threats of arrest and intimidation to interfere with Plaintiffs' rights to maintain their personal liberty in the exercise of Plaintiffs' rights secured by the Constitution of the United States, the Constitution of the State of Florida, and the statutory laws of the State of Florida.

72. Plaintiffs was threatened (by BOONE) that if he spoke, or voiced anything in exercise of his First Amendment rights, that he would be arrested.

### ELEVENTH CAUSE OF ACTION (FALSE ARREST)

73. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

74. Plaintiff was falsely arrested for allegedly "resisting arrest" after providing BOONE with his Florida Driver's license and while and after BOONE had turned away from Plaintiff, was walking away to logically run Plaintiff's identification, and being told by Plaintiff to "hurry up" (see narrative above). BOONE had no legal justification to arrest Plaintiff, have him handcuffed, tell him he was being arrested, arresting him on an unsubstantiated and meritless charge, detaining him in the back of a cruiser retrained, and as such depriving Plaintiff oh his liberty in violation of the United States Constitution and Florida Statute Chapter 787. Defendants, their agents and employees, had and have a duty owed to Plaintiff, as all citizens, to protect his/their personal liberty and to uphold Florida law. Defendants breached the duty to protect Plaintiffs' rights when their agents and employees wrongly exerted dominion over the Plaintiffs' his constitutional and statutory rights.

75. Defendants had no legitimate governmental interest that gave their agents and employees the legal right or justification to detain Plaintiff.

76. As a direct and proximate consequence of the acts of Defendants' agents and employees, Plaintiff has suffered and continue to suffer stress, anxiety, and other loss from the Defendant(s) actions, or failures to act, and is entitled to compensatory damages

77. Despite being told he was under arrest, an emotionally stressful and damaging event by itself, and despite Defendant(s) arresting Plaintiff, no charges were ever filed against Plaintiff.

78. As a direct and proximate consequence of the acts of Defendants' agents and employees, Plaintiffs has suffered and continues to suffer injury.

## INJUNCTIVE RELIEF

79. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth hereat.

80. Defendants' acts alleged above violate established constitutional rights of Plaintiffs and Defendants could not reasonably have thought that the conduct of their agents and employees in seizing and arresting and/or detaining Plaintiff property was lawful.

81. An actual controversy exists between Plaintiffs and Defendants in that Defendants, their agents and employees, have engaged in the unlawful and unconstitutional acts alleged herein and intend to continue to do so. Plaintiff claims that these acts are contrary to law and seek a declaration of their rights with regard to this controversy. Defendant(s) must be held accountable and not allowed to circumvent citizen's rights at will, without consequence.

82. As a direct and proximate consequence of the acts of Defendants' agents and employees, Plaintiff has suffered and will continue to suffer, however, Plaintiff seeks that CCSO, Defendant(s), and BOONE in particular be trained by a professional third party authority as to their duties in protecting the Constitutionally mandated rights of citizens.

WHEREFORE, Plaintiffs pray as follows:

    1. For a temporary restraining order, preliminary and permanent injunction, enjoining and restraining Defendants from engaging in the policies, practices and conduct complained of herein;

    2. For a declaratory judgment that Defendants' policies, practices as shown in Defendant(s) show disregard for citizens rights and conduct as alleged herein violate Plaintiffs' rights under the United States and Florida constitutions and the laws of Florida;

    3. For an order directing Defendants to seek, undergo, and complete training in Constitutional rights of citizens, and Florida statutes regarding false arrest;

    4. For an impartial third party to be assigned to conduct and investigate citizen complaints where unlawful arrest or unlawful search and seizure are the subject matter or are material elements.

5. For damages in an amount to be determined by jury for each of plaintiff's causes of action .

6. For costs of suit and attorney fees as provided by law;

7. For such other relief as the Court deems just and proper.

Dated: December 20, 2019

Respectfully submitted,

*[signature]*

Skot David Wilson, Plaintiff, Pro Se

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: 20 December 2019

Skot David Wilson, Pro Se
447 McIntosh Avenue
Orange Park, Florida 32073
904-872-0571
skotdavidwilson@yahoo.com